UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-379-KSF
*(Consolidated with Civil Action No. 08-420)*

BRIAN BAKER, *et al*.                                                                                    PLAINTIFFS

v.                                           **OPINION & ORDER**

KENNY MCDANIEL, *et al.*                                                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Currently before the Court are the parties' cross motions for summary judgment [DE ##26, 27, and 28]. These motions are fully briefed and are ripe for review.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This consolidated civil rights action arises from the plaintiffs' employment as volunteer firefighters with the City of Stanford, Kentucky Fire Department (the "Fire Department"). Plaintiff Brian Baker, a Lieutenant, began his employment with the Fire Department in 1996, and in 2007 served as the Equipment Officer. Plaintiff Brian Jenkins, a Captain, began working at the Fire Department in 1992, and Plaintiff Gary Jenkins, a senior engineer, began working at the Fire Department in 1991 or 1992. Plaintiff Brandon Jenkins began working as a junior firefighter at the Fire Department in 1995 at the age of seventeen. He moved out of the area in 2001, but returned to the Fire Department in early 2007. Defendant Kenneth McDaniel was appointed as Fire Chief of the Fire Department in October 2003, and served in that capacity throughout all relevant times herein. Defendant William Miracle became Mayor of the City of Stanford in January 2007.

Beginning in January 2006, Brian Baker, Brian Jenkins, Gary Jenkins, and Brandon Jenkins (collectively "the plaintiffs") became concerned about the safety and reliability of the equipment

being used by the Fire Department. Their concerns included: a lack of testing on hoses, a rusted-out battery compartment on a fire engine, faulty wiring systems for engine windshield wipers and headlights, a malfunctioning air tank, and a leaking fuel tank. They complained to Chief McDaniel several times over the course of a year, and although Chief McDaniel acknowledged problems with the equipment, they contend that he failed to take any action.

As a result of the alleged inaction, Brian Baker, Brian Jenkins, Gary Jenkins, and others requested a meeting with Mayor Miracle in February 2007. At that meeting, they registered various complaints about Chief McDaniel, including his "unprofessionalism, his lack of showing up to work, and his lack of knowledge for the fire service." The plaintiffs contend that Mayor Miracle acknowledged the problems and agreed to help address their concerns. Baker subsequently had other conversations with Mayor Miracle, again complaining about Chief McDaniel. Nevertheless, the plaintiffs allege that Mayor Miracle failed to take any action to address their complaints.

The plaintiffs then placed the Fire Department on the agenda for the Stanford City Council meeting scheduled for July 2007. They allege that Mayor Miracle removed the Fire Department from the agenda so that the concerned plaintiffs were prevented from addressing their concerns to the City Council. The plaintiffs attended the next meeting of the City Council in August 2007. After the meeting adjourned, Brian Baker, Brian Jenkins and Gary Jenkins voiced about their concerns about Chief McDaniel to two or three City Council members. Specifically, they complained that Chief McDaniel was requesting funds to pay for air packs which the plaintiffs contend were not needed. Instead, the plaintiffs indicated a need to spend money on other equipment. Mayor Miracle was present and defended Chief McDaniel..

Approximately two weeks later on August 15, 2007, Baker was called into Mayor Miracle's real estate business office. Both Mayor Miracle and Chief McDaniel were present and informed Baker that he was fired from his position with the Fire Department. Baker was also notified that the City Council concurred with the termination. Brian Jenkins and Gary Jenkins were subsequently fired on December 11, 2007. While the defendants contend that Brandon Jenkins resigned from his position, the plaintiffs allege that he was terminated on January 8, 2008.

Baker subsequently filed this civil action in Lincoln Circuit Court, against McDaniel, individually and as Chief of the Stanford Fire Department, Miracle, individually and as Mayor of Stanford, Kentucky, and the City of Stanford, Kentucky. His complaint alleges violation of Kentucky's whistleblower statute, KRS 61.102, and retaliation for exercising his right to free speech as guaranteed by the First Amendment. Baker further alleges that he was deprived of his liberty and property interests without due process based upon the Fourteenth Amendment Due Process Clause, as well as KRS 95.762(4) and the Lincoln County Fire Department's Standard Operating Procedures. Baker seeks compensatory damages, injunctive relief, punitive damages, and attorneys' fees and costs. This matter was removed to this Court on November 6, 2007, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 [DE #1].

Baker's whistleblower claim was ultimately dismissed by the Court on January 24, 2008, because the Kentucky Whistleblower Act, KRS 61.102, does not apply to municipalities, including the City of Stanford [DE #7]. The Court further held that Baker's whistleblower claim against the individual defendants should also be dismissed pursuant to *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 433-34 (Ky. 2005). Pursuant to an Agreed Order, Baker subsequently filed his Amended Complaint adding a claim for Wrongful Discharge in Contravention of Public

3

Policy, as well as a claim that his termination violated KRS 75.130 in that he was not afforded any of the procedural safeguards guaranteed by that statute [DE ##12, 13]. This action was ultimately consolidated with a similar action, *Gary Jenkins, et al. v. City of Stanford, et al.*, 08-420-JBC, wherein the plaintiffs, Gary Jenkins, Brian Jenkins, and Brandon Jenkins, make similar claims against the City of Stanford, Chief McDaniel and Mayor Miracle relating to their termination from the Fire Department [DE #21]. After the conclusion of discovery, the parties have filed their motions for summary judgment.

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris*

*Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

**III.     THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

The defendants have moved for summary judgment on all counts of the plaintiffs' complaints. The plaintiffs have moved for summary judgment on their claims based on the alleged violation of the procedural safeguards contained in KRS 75.130 and for retaliation based upon the exercise of their First Amendment rights. Before addressing the plaintiffs' state law claims, the Court first turns to the federal claims on which this Court's jurisdiction is grounded. Should the defendants prevail on their motion for summary judgment with respect to the federal claims, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

Although the plaintiffs' complaints do not explicitly refer to 42 U.S.C. § 1983, their federal claims are grounded in this statute. To prevail on a § 1983 claim against the individual defendants, the plaintiffs must establish that a person acting under color of law deprived them of a right secured by the Constitution or laws of the United States. *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005). To prevail on a § 1983 against the government, the plaintiffs must show that the alleged federal right violation occurred because of a municipal policy or custom. *Monnell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978).

The individual defendants argue, however, that they are entitled to the absolute defense of qualified immunity with respect to the plaintiffs' federal claims. "Qualified immunity is a government official's 'entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U. S. 194, 200 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has delineated a two-part test in order to determine the applicability of the qualified immunity defense. *Saucier*, 533 U.S. at 194. First, the court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Id*. at 201. If the party asserting the injury was deprived of his constitutional rights, then the court must go on to ask whether that right was clearly established. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. at 202. With these principals in mind, the Court turns to the plaintiffs' federal claims.

    **A.**    **FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM**

The plaintiffs contend that they were removed from their positions in the Fire Department without due process of law in violation of the Fourteenth Amendment. The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. U.S. Const. amend XIV, § 1. The Fourteenth Amendment's guarantee of procedural due process assures that the deprivation of life, liberty, or property "be preceded by notice and opportunity for a hearing appropriate to the nature of the case." *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1986). When faced with a claim for violation of due process rights, federal courts engage in a two-step analysis. First, the court must determine whether a protected property interest exists, and

6

second, what procedures are required to protect that interest. *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990).

In this case, the plaintiffs presuppose the existence of a protectable interest that they simply do not possess. Generally speaking, volunteers do not have property interests in their positions, and thus do not have a constitutional right to due process. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3rd Cir. 1993)(concluding volunteer firefighter did not have due process right to hearing on termination); *Hyland v. Wonder*, 117 F.3d 405, 412 (9th Cir. 1997)(plaintiff "fails to state a due process claim because he lacked a property interest in his position as a volunteer"); *Hale v. Bexar County, Tex*, 2009 WL 2222833 (5th Cir. July 27, 2009)(finding no due process right to serve as volunteer firefighters). Consequently, the plaintiffs had no property interest in their volunteer positions which could support any claim for a pre-deprivation hearing.

Their volunteer status also negates any claim to a protected liberty interest. To be sure, when a state's adverse employment decision challenges the employee's good name, reputation, honor or integrity, notice and opportunity to be heard are essential. However, reputation alone, apart from some more tangible interests such as employment, is neither "liberty" nor "property" sufficient to invoke the procedural protections of the due process clause. *Paul v. Davis*, 424 U.S. 693, 701 (1976). Moreover, courts that have addressed the constitutional requirements for a protected interest in reputation in a volunteer context have refused to find such a protected interest where the plaintiff has failed to show lost opportunity for employment. *See Jungels v. Pierce*, 825 F.2d 1127, 1131 (7th Cir. 1987)(finding that the complaint failed to state a cause of action for deprivation of a liberty interest because "[the] principal does not reach a case where the employee is fired from a part-time,

7

honorific job while retaining employment that gives him his livelihood"); *Shands v. City of Kennett*, 789 F.Supp. 989, 995 (E.D. Mo. 1992)(finding no liberty interest is implicated in the context of volunteer fire department where plaintiffs failed to establish that their terminations caused them "economic damage or lost . . . opportunity for employment"); *see also Kennedy v. McCarty*, 778 F.Supp. 1465, 1477-78 (S.D.Ind. 1991) (finding that reserve police officer failed to establish a deprivation of a liberty interest by termination where he did not show that the termination affected his primary means of employment). Because the plaintiffs have failed to identify a protectable property or liberty interest, there is no need to determine exactly what process is due for purposes of their constitutional claims.

Thus, the plaintiffs have failed, as a matter of law, to establish the necessary elements of a procedural due process claim based on the Fourteenth Amendment and, therefore, cannot satisfy the first part of the qualified immunity inquiry. The individual defendants are entitled to qualified immunity on this claim. Furthermore, because the plaintiffs have failed to establish any violation of their procedural due process rights resulting from any governmental policy or custom, the official defendants are also entitled to qualified immunity on this claim. Accordingly, the Court will enter summary judgment in favor of the defendants on the plaintiffs' Fourteenth Amendment procedural due process claim.

**B.  FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM**

The plaintiffs' complaint also asserts a substantive due process claim based on the fundamental right to free speech. However, this claim is essentially duplicative of their First Amendment retaliation claim. Because the plaintiffs' claim under the First Amendment is more applicable to the alleged facts, reliance on substantive due process is inappropriate. *Brandenburg*

*v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, the Court will enter summary judgment in favor of the defendants on the plaintiffs' Fourteenth Amendment substantive due process claim..

    **C.**    **FIRST AMENDMENT RETALIATION CLAIM**

The Court now turns to the plaintiffs' claim that the defendants violated their First Amendment rights when they were allegedly terminated in retaliation for voicing their concerns related to the safety of the Fire Department's equipment and the unprofessionalism of Chief McDaniel. Initially, the defendants argue that because the plaintiffs were volunteers, as opposed to paid public employees, the defendants cannot be found liable for retaliatory discharge. This Court disagrees.

The fact that the plaintiffs were volunteers does not affect the First Amendment analysis. Unlike a procedural due process claim, for which the Court would need to find a "protected property interest" in the plaintiffs' positions, a First Amendment claim raises the question whether the defendants "unconstitutionally retaliated against them on account of their protected speech." *McGill v. Bd. of Educ. of Pekin Elementary Sch. Dist. No. 108*, 602 F.2d 774, 780 (7th Cir. 1979). In fact, "[t]he Supreme Court has made it clear, particularly in the context of at-will employment and a number of non-employment related government benefits, that while a person has no 'right' to a valuable government benefit and the government can withhold a benefit for a number of reasons '[i]t may not deny a benefit to a person on a basis that infringes . . . constitutionally protected interests - especially . . . freedom of speech.'" *Mosely v. Bd. of Educ. of the City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006)(citing *Perry v. Sindermann*, 408 U.S. 593 (1972)). Moreover, courts have recognized the right of a volunteer fireman to sue for a deprivation of his First Amendment rights

9

based on the fact that experienced and status often accompany a volunteer position amounting to a benefit or privilege that cannot be taken away unconstitutionally. *See Brown v. Disciplinary Committee of Edgerton Volunteer Fire Department*, 97 F.3d 969 (7th Cir. 1996); *Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992); *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17 (2nd Cir. 1979). For these reasons, the Court holds that despite the fact that the plaintiffs may not have had a right to their volunteer positions, the defendants cannot deny the plaintiffs the benefits or privileges associated with their positions because they engaged in constitutionally protected activity.

The Court thus turns to an analysis of the merits of the plaintiffs' First Amendment retaliation claim. In general, a "government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just because of his or her employment." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). However, those rights are subject to limits beyond what the Constitution allows for the general public. *Id*.

In the Sixth Circuit, when presented with a First Amendment retaliation claim, the Court must consider three elements:

> (1) whether the employee engaged in constitutionally protected speech;
>
> (2) whether the employee was subjected to an adverse action or was deprived of some benefit;
>
> (3) whether the employee's protected speech was a substantial or a motivating factor in the adverse action.

*Scarbrough v. Morgan County Bd. of* Educ., 470 F.3d 250, 255 (6th Cir. 2006); *Miller v. Administrative Office of the Courts*, 448 F.3d 887, 894 (6th Cir. 2006). If the plaintiffs can establish these elements, then "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same

adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Because the plaintiffs are public employees, they must also satisfy a two-part balancing test in order to establish that their speech was a constitutionally protected activity. *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006), s*ee e.g. Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 574 (1968); *Hardy v. Jefferson Cmty. College*, 260 F.3d. 671, 678 (6th Cir. 2001). First, the plaintiffs must show that the speech involved matters of public interest or concern. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001); *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 345-46 (6th Cir. 2001). Second, the plaintiff must show that the speech was made outside the duties of employment. *Miller v. City of Canton*, 319 Fed.Appx. 411, 416 (6th Cir. 2009). If both of these threshold showings are made, then the plaintiffs must also show that their interest "in commenting upon matters of public concern" outweighed the "interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568; *Leary v. Daeschner*, 394 F.3d 888 (6th Cir. 2003).

Whether the speech at issue is a matter of public concern is a question of law for the Court. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008); *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004). The Court must consider the content, form and context of the statement based on the whole record. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Generally, a matter of public concern is a "matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. In other words, speech relating to "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" is a matter of public concern. *Brandenburg*, 253 F.3d at 898. The

11

Court must distinguish between matters of public concern, which are protected speech, and internal personnel disputes or complaints about an employer's performance, which are not protected. *Rodgers v. Banks*, 344 F.3d 587, 596-97 (6th Cir. 2003).

Based on *Connick* and subsequent cases, the Sixth Circuit has announced the "public concern" test, by which the Court must examine the following: "the 'focus' of the speech; 'the point of the speech in question'; to what purpose the employee spoke'; 'the intent of the speech'; or 'the communicative purpose of the speaker.'" *Farhat*, 370 F.3d at 592. Applying these principles to the present case, the Court finds that the plaintiffs' speech and activities were made in the course of their duties and do not rise to the level of matters of public concern sufficient to support a First Amendment retaliation claim.

A review of the record reveals that the plaintiffs were not speaking as citizens. According to the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Baker, in his capacity as the Equipment Officer, had a duty to report his concerns about the safety of the equipment to his superiors, including Chief McDaniel and Mayor Miracle. Under *Garcetti*, his speech, pursuant to his official duty as Equipment Officer, is categorically non-protected and bars his First Amendment claim.

To the extent that Baker and the other plaintiffs complained to the Mayor and some City Council members about Chief McDaniel, their complaints were not made publicly, but rather to their superiors, and related directly to their positions as firefighters. As noted by the Sixth Circuit in *Scarbrough*, 470 F.3d at 256:

12

> [s]peech made to a public audience, outside the workplace, and involving content largely unrelated to government employment indicates that the employee speaks as a citizen, not as an employee, and speaks on a matter of public concern.

The plaintiffs' comments about Chief McDaniel to Mayor Miracle and City Council members simply amount to internal personnel disputes and employee grievances made in the course of their employment. "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Garcetti*, 547 U.S. at 420. Similarly, their complaints that Chief McDaniel was purchasing air packs when the limited available funds should, in their opinions, be used in another manner, does not amount to a public concern. As noted by the Sixth Circuit in *Barnes v. McDowell*, 848 F.2d 725, 734-35 (6th Cir. 1988), employee speech criticizing the "wisdom and propriety of some of the [employer's] purchasing practices" does not involve a matter of public concern, such as public corruption, but constitutes nothing more than examples of the quintessential employee beef: management has acted incompetently." *Id*. at 734-45 (quoting *Murray v. Gardner*, 741 F.2d 434, 438 (D.C.Cir. 1984)). While it is true that public money and government efficiency may be related to the plaintiffs' speech, this alone does not "qualify that speech as being addressed to a matter of public concern." *Id*. at 734. Finally, while the plaintiffs have charged Chief McDaniel with unprofessionalism and incompetence, these criticisms alone, absent corruption or wrongdoing, do not qualify as matters of public concern. *See Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999).

The only truly public comment came from Brandon Jenkins in a letter to the editor of the local newspaper, stating his "concerns of the direction of the department after terminating very experienced members of the department without justification" [DE #31-19]. However, this one public comment alone, however, does not amount to a matter of public concern. Brandon Jenkins'

complaint about the "direction" of the Fire Department and the termination of some of its firefighters amounts to no more than internal employee grievances and is not protected speech.

Even if the Court were to construe the plaintiffs' equipment grievances or their criticism of Chief McDaniel's management as matters of public concern made outside the course of their employment, the plaintiffs' interest in their speech does not "outweigh the employer's interest in promoting the efficiency of the public service it performs through its employees." *Pickering*, 391 U.S. at 568. Noting the need to strike a balance between workplace speech and employer efficiency, the Sixth Circuit has set out several factors for the Court to consider when making this determination, including whether the speech: (1) was related to an issue of public interest and concern; (2) was likely to foment controversy and disruption; (3) impeded the department's general performance and operation; (4) affected loyalty and confidence necessary to the department's proper functioning; (5) subverted department discipline; (6) was false and the employer could not have easily rebutted or corrected the errors; and (7) was directed toward a person whom the speaker normally contacted within the course of daily work. *See Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988)(citing *Pickering*, 391 U.S. at 569-73)(1968)). In this case, the balance of factors is in favor of the defendants. First, the plaintiffs' speech boils down to complaints about expenditures and grievances over management - not generally matters of public concern. Certainly, this type of speech is likely to foment controversy and disruption and may have affected loyalty and confidence or impeded the department's general performance and operation. The firefighters' inability to get along with the Fire Chief is certainly a threat to the proper functioning of the Fire Department. These plaintiff firefighters were clearly dissatisfied, and this dissatisfaction inevitably affected morale and their ability to serve under Chief McDaniel. Moreover, the speech at issue was

directly related to the firefighters' employment and was made to their supervisors - the Fire Chief, Mayor and City Council members - and not generally to the public at large. The plaintiffs, in sum, were speaking as employees about ordinary workplace grievances regarding management. The Court finds that the efficient operation of the Fire Department outweighs any minimal speech interest of the plaintiffs; therefore, the First Amendment does not protect any of the plaintiffs' speech.

Because the plaintiffs have failed to satisfy the first prong of a First Amendment retaliation claim, the individual defendants are entitled to qualified immunity on this claim. With respect to the plaintiffs' claims against the City of Stanford, the Court recognizes that a city may be "liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1987). Respondeat superior is not available as a theory of recovery under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Because the plaintiffs have failed to "identify a municipal 'policy' or 'custom' that caused their injury," *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997), their federal claims against the City must be dismissed. Additionally, a suit brought against an individual in his official capacity is the equivalent of a suit brought against the governmental entity. *Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005). Therefore, the plaintiffs' claims against McDaniel and Miracle in their official capacities are the same as their claims against the City of Stanford. For these reasons, the defendants are entitled to qualified immunity on the plaintiffs' First Amendment retaliation claim, and summary judgment will be entered in favor of the defendants.

    D.    **STATE LAW CLAIMS**

Because the plaintiffs have failed to set forth a viable federal claim, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §

15

1367. These state law claims will be dismissed without prejudice to refiling in state court.

**IV.    CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

    (1)    the defendants' motion for summary judgment [DE #26] is **GRANTED IN PART** to the extent that the Court will enter summary judgment in favor of the defendants on the following claims:

        (a)    the plaintiffs' federal claims based on their Fourteenth Amendment procedural and substantive due process rights;

        (b)    the plaintiffs' federal claim for retaliation in violation of the First Amendment;

    (2)    the defendants' motion for summary judgment [DE #26] is **DENIED** to the extent that the Court declines to exercise jurisdiction over the plaintiffs' state law claims, and they will be **DISMISSED WITHOUT PREJUDICE** to refiling in state court:

    (3)    the plaintiffs' motions for summary judgment [DE #27 and 28] are **DENIED**; and

    (4)    the pretrial conference set for September 24, 2009 and the jury trial set for October 20, 2009 are hereby **SET ASIDE**; and

    (5)    a judgment will be entered contemporaneously with this Opinion & Order.

This August 24, 2009.

**Signed By:**

_Karl S. Forester_ KSF

**United States Senior Judge**